597 So.2d 573 (1992)
The CITY OF BATON ROUGE, the Parish of East Baton Rouge, and the East Baton Rouge Parish Communications District
v.
The MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD OF BATON ROUGE, Baton Rouge Union of Police, Local 237, I.U.E.A. AFL-CIO and Baton Rouge Firefighters Local 557, International Association of Firefighters, AFL-CIO.
The CITY OF BATON ROUGE, the Parish of East Baton Rouge, and the East Baton Rouge Parish Communications District
v.
The MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD OF BATON ROUGE.
Nos. 91 CA 1625, 91 CA 1696.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Writ Denied May 15, 1992.
Victor Sachse, III, and Gordon Pugh, Baton Rouge, for plaintiff-appellant City of Baton Rouge, Parish of East Baton Rouge, EBR Parish Communications District, et al.
James Zito, Baton Rouge, for defendant-appellee Municipal Fire & Police Civ. Service Bd. of B.R.
Floyd Falcon, Jr., Baton Rouge, for defendant-appellee B.R. Union of Police, Local 237, IUEA, AFL-CIO, B.R. Firefighters Local 557, Intern. Ass'n of Fire-Fighters, AFL-CIO, et al. Kay Calhoun, Brian Arceneaux and Herman Garner.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
These consolidated actions arise out of the creation of a communications district in the Parish of East Baton Rouge.

*574 BACKGROUND
By Acts 1983, No. 550, § 1, the legislature enacted LSA-R.S. 33:9101 et seq., which permitted the creation of communications districts by parish governing authorities. LSA-R.S. 33:9101 A provides as follows:
The governing authority of any parish may by ordinance create communications districts composed of any part of all of the territory lying wholly within the parish. Such districts shall be political and legal subdivisions of the state, with power to sue and be sued in their corporate names and to incur debt and issue bonds.
The expressed purpose of allowing the creation of these communications districts is "to establish the number 911 as the primary emergency telephone number ... and to provide for the identification of all streets, roads, highways, and dwelling places in such districts." LSA-R.S. 33:9102.[1] Upon the creation of a communications district, the parish governing authority is permitted to appoint a board of commissioners to govern the affairs of the communications district. LSA-R.S. 33:9103 A. The board of commissioners of the district has authority to employ such employees, experts, and consultants necessary to discharge its responsibilities, as well as the authority to select a dispatch method. LSA-R.S. 33:9103 D and 9105. LSA-R.S. 33:9105 sets forth the following methods to respond to emergency calls:
(1) `Direct dispatch method', that is a telephone service to a centralized dispatch center providing for the dispatch of an appropriate emergency service unit upon receipt of a telephone request for such services and a decision as to the proper action to be taken.
(2) `Relay method', that is a telephone service whereby pertinent information is noted by the recipient of a telephone request for emergency services, and is relayed to appropriate public safety agencies or other providers of emergency services for dispatch of an emergency service unit.
(3) `Transfer method', that is a telephone service that receives telephone requests for emergency services and directly transfers such requests to an appropriate public safety agency or other provider of emergency services.
(4) `Referral method', that is a telephone service that, upon the receipt of a telephone request for emergency services, provides the requesting party with the telephone number of the appropriate public safety agency or other provider of emergency services.
LSA-R.S. 33:9106 sets forth the methods by which the communications districts may be funded.
Pursuant to this legislative authority, on May 14, 1986, the Metropolitan Council of the Parish of East Baton Rouge and City of Baton Rouge (City-Parish) created a communications district entitled "East Baton Rouge Parish Communications District" (District) and established a board of commissioners to govern the District. Ordinance *575 No. 8148.[2] Thereafter, on August 27, 1986, the City-Parish adopted a resolution ratifying, approving, and confirming the calling of a special election with regard to the levy of a telephone surcharge to maintain an Emergency 911 telephone system. Resolution No. 25466. Ordinance No. 8274, which was adopted by the City-Parish on November 12, 1986, declared that the special election on Resolution No. 25466 was carried by a majority of the qualified electors. Thereafter, the board of commissioners of the District selected the direct dispatch method to respond to emergency calls.
In response to these actions by the City-Parish and the District, the Municipal Fire & Police Civil Service Board (Board) passed several resolutions, which are at the center of the controversy presented in these consolidated actions. On May 22, 1990, the Board passed a resolution placing the employees of the District within the municipal fire and police civil service system. On November 13, 1990, the Board held a meeting to discuss, among other things, the telecommunications division and the fact that the Fire and Police Communications Division was not in the 1991 budget. At the meeting, the Board adopted several motions. In one such motion, the Board advised the Mayor, Council, and the Fire and Police Chiefs of the City of Baton Rouge that LSA-Const. art. 10, § 15 expressly excludes from a City-Parish Civil Service System regularly paid municipal fire and police department officers. The Board also advised that LSA-Const. art. 10, § 19 prohibits the inclusion of firefighters and police officers in the classified service of a city civil service system. In addition, the Board advised that the classified service under the jurisdiction of the Board includes fire and police operation and maintenance of radio, fire and police alarm, or signal systems, citing LSA-R.S. 33:2481 A. The motion further stated that "only classified employees of the Fire and Police Communications division shall dispatch vehicles of their respective departments." On January 15, 1991, the Board passed another resolution, directing the fire chief to fill the position of Chief of Fire Communications left vacant by the departure of Brice Achord and to fill all positions left vacant thereafter.
On June 18, 1990, the City-Parish and the District filed an appeal and a petition to annul the resolution and for injunctive and declaratory relief under docket number 358,429. The Board was made a defendant in this proceeding. In this appeal and petition, the City-Parish and the District alleged that the Board's May 22, 1990 attempt to place the employees of the District within the municipal fire and police civil service system was a usurpation of the District's statutorily granted authority. The City-Parish and the District requested that the trial court annul the Board's action, declare that the District and its employees are not represented by the Board, and enjoin the Board from enforcing its May 22, 1990 resolution.
After a hearing, the trial court, for oral reasons assigned, rendered judgment on July 16, 1990. The Board's action, placing the District's employees under the municipal fire and police civil service system, was vacated by the trial court. The trial court ordered that District employees are not under the jurisdiction of the Board, with one exception. The exception required that dispatch employees of the District, who are performing dispatch functions relative to the fire and/or police department, be subject to the jurisdiction of the Board and governed by the laws regarding the municipal fire and police civil service system, until the classifications of dispatchers in the fire and police departments are abolished. Moreover, the trial court ordered that the District's employees, other than those dispatch employees previously discussed, are not state civil service employees, but fall under the city civil service system. This judgment was signed on June 25, 1991. The City-Parish and the District suspensively appealed this adverse judgment.
On December 6, 1990, the City-Parish and the District filed an appeal from the Board's November 13, 1990 resolution under *576 docket number 364,188. The City-Parish and the District requested the trial court to annul the resolution and render a declaratory judgment, recognizing the transfer of the emergency communications function and service from the police and fire departments to the District and including that function in the city civil service system. The City-Parish and the District also requested the trial court to recognize the authority of the City-Parish to reduce the number of positions in each of the fire and police communications classifications to one position.
On February 8, 1991, the City-Parish filed an appeal from the Board's January 15, 1991 action under docket number 366,172. The City-Parish alleged that the Board's action, requiring that the Chief of Fire Communications position be filled, was void and requested that the trial court annul such action.
By order dated February 8, 1991, the action under docket number 366,172 was consolidated with the action pending under docket number 364,188. These matters were tried on February 22, 1991. The trial court, for written reasons assigned, rendered judgment in favor of the Board and against the City-Parish and the District. The trial court determined that District employees were required to be members of the municipal fire and police civil service system and that, as such, the November 13, 1990 and January 15, 1991 resolutions were valid and proper. The City-Parish and the District suspensively appealed this adverse judgment.
On joint motion of the City-Parish, the District, and the Board, these two appeals were consolidated by order dated September 30, 1991. The issues presented in these consolidated actions are:
A. Whether any personnel of the East Baton Rouge Parish Communication District whose duties include inter alia dispatch of fire or police vehicles, must be participants in the Municipal Fire and Police Civil Service System.
1. Whether or not Article VI Section 14 of the 1974 Constitution controls the decision of this case.
2. Whether or not there is a conflict between La. R.S. 9:9101 (sic) et seq. and Ordinance Nos. 8148 and 8668 adopted pursuant thereto, together transferring the entire emergency communication function to the East Baton Rouge Parish Communications District, and La. R.S. 33:2471 et seq, and Article 14 Section 15.1 of the 1921 Constitution, now a statute with respect to Municipal Fire and Police Civil Service.
3. Alternatively if such a conflict exists whether or not La. R.S. 33:9101 et seq. as later legislation is controlling.
4. And in connection therewith whether or not Article III Section 15(B) prevents repeal by implication.
B. Whether or not all classified personnel of the East Baton Rouge Parish Communications District are in the Parish and City Personnel System established by Section 9.02 et seq. of the City of Baton Rouge/Parish of East Baton Rouge Plan of Government, or the State Civil Service System established by Article X Sections 1-13 of the Louisiana Constitution of 1974.

ANALYSIS
LSA-Const. art. 10, § 16 establishes a classified fire and police civil service system, which applies to all municipalities with a population in excess of 13,000 which operate regularly paid fire and municipal police departments. Moreover, firemen and policemen in municipalities having a population between 13,000 and 400,000 and operating regularly paid fire and municipal police departments are expressly barred from inclusion in a city civil service system. LSA-Const. art. 10, § 19.
Various statutory provisions are also applicable to municipal fire and police civil service systems. LSA-R.S. 33:2471 et seq. sets forth the fire and police civil service law for municipalities with populations between 13,000 and 250,000. These provisions apply to municipalities with the requisite populations which operate regularly paid fire and police departments. LSA-R.S. 33:2471. Additionally, these provisions *577 create in the municipal government a classified service known as "the municipal fire and police civil service" system. LSA-R.S. 33:2475. This civil service system embraces the positions of employment, the officers, and the employees of municipal fire and police services. LSA-R.S. 33:2475.
Classified service within this civil service system is defined as "every appointive office and position of trust or employment in the municipal government which has as its primary duty one of the functions" specifically set forth in LSA-R.S. 33:2481. See LSA-R.S. 33:2473(7). LSA-R.S. 33:2481 A addresses the classified service of the municipal fire and police civil service system and provides as follows:
The classified service shall comprise every position, except those included in the unclassified service, to which the right of employee selection, appointment, supervision, and discharge is vested in the municipal government or with an officer or employee thereof, and which has as its primary duty and responsibility one of the following:

(Fire)
(1) The chief and assistant chiefs; the intradepartmental division, bureau, squad, platoon and company officers of the fire department.
(2) Fire fighting.
(3) Fire prevention; inspection.
(4) Driving, tillering, and operation of fire apparatus.
(5) Operations and maintenance of radio, fire alarm, or signal system.
(6) Fire department instructors in employee training.
(7) Fire salvage and overhauling, first aid, advance life support, and emergency medical services.
(8) Automotive or fire apparatus repairs, if such service is operated exclusively by and for either or both the fire or police department.
(9) Secretary to the chief. Departmental records clerk.

(Police)
(1) The chief and assistant chiefs; the intradepartmental division, bureau, squad, platoon and company officers of the police department.
(2) Law enforcement.
(3) Crime prevention; identification; inspection; and investigation.
(4) Police headquarters desk service; jailer, and police matron.
(5) Operations and maintenance of radio, police alarm, or signal system.
(6) Police department instructors in employee training.
(7) Police control of traffic (vehicular and pedestrian.)
(8) Automotive or police apparatus repairs, if such service is operated exclusively by and for either or both the police or fire department.
(9) Secretary to the chief. Department records clerk.
Pursuant to the clear constitutional and statutory provisions governing the municipal fire and police civil service systems, we find that the municipal positions which are responsible for the operations and maintenance of radio, fire or police alarm, or signal systems for either service are required to participate in the municipal fire and police civil service system and are expressly prohibited from participating in the city civil service system.
However, our inquiry does not end here. We must now determine whether the legislative provisions authorizing the creation of communications districts, LSA-R.S. 33:9101 et seq., permit the municipal employees mandated to be included in the municipal fire and police civil service system to be removed from that civil service system and placed in another civil service system.
The provisions of LSA-R.S. 33:9101 et seq. authorize parish governing authorities to create, by ordinance, communications districts and establish 911 as the primary emergency number for use in the communications districts created. LSA-R.S. 33:9101 A and 9102. The communications districts created by the parish are authorized to employ the workforce required to *578 discharge their responsibilities. LSA-R.S. 33:9103 D. Additionally, the communications districts may fund the telephone systems under their jurisdiction by means of a telephone surcharge. LSA-R.S. 33:9106. Moreover, LSA-R.S. 33:9105 permits the emergency telephone system under the auspices of the communications districts to utilize one of four dispatch methods to respond to emergency calls.
Nothing in these provisions, however, permits or authorizes municipalities to alter the civil service system established by the constitution and by the legislature. Nor do these provisions authorize the transfer from the municipal fire and police civil service system employees who perform the responsibilities and duties of operating and maintaining the radio, fire or police alarm, or signal systems from that civil service system into another. We find, as did one of the trial judges, that the objective of the City-Parish and the District to consolidate emergency communication services into one agency is laudable and commendable. Such an agency may promote the efficiency and effectiveness of the delivery of emergency services. Such a system may provide a significant contribution to law enforcement and other public service efforts by simplifying the notification process of emergency personnel. However, the attempted transfer of the functions of operating and maintaining the radio, fire or police alarm, or signal systems, which include the dispatching duties, from the municipal fire and police civil service system into another civil service system is not authorized by the statutory provisions creating the communications districts.

CONCLUSION
For these reasons, judgment is rendered herein in favor of the Board and against the City-Parish and the District, finding that those District employees who dispatch emergency vehicles with regard to fire and police services or perform other duties set forth in LSA-R.S. 33:2481 A, are subject to the jurisdiction of the Board. Those employees of the District, other than those employees who dispatch emergency vehicles with regard to fire and police services or perform other duties set forth in LSA-R.S. 33:2481 A, are not subject to the jurisdiction of the Board, but are included in the city civil service system. To the extent that the trial court judgments are consistent with this opinion, they are affirmed. The judgments of the trial court are reversed insofar as they are inconsistent with the views expressed herein. The City-Parish and the District are cast for costs in the amount of $2,148.54.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] LSA-R.S. 33:9102 addresses the purpose of Chapter 31 of Title 33 of the Louisiana Revised Statutes and provides as follows:

It has been shown to be in the public interest to shorten the time required for a citizen to request and receive emergency aid. The provision of a single, primary three-digit emergency number through which emergency services can be quickly and efficiently obtained will provide a significant contribution to law enforcement and other public service efforts by simplifying the notification of public service personnel. Furthermore, the identification of all streets, roads, highways, and dwelling places by name and number will serve to decrease the response time of law enforcement and public service personnel to emergency calls by facilitating the systematic location of such places without difficulty and ambiguity. Such a simplified means of procuring emergency services will result in the saving of life, a reduction in the destruction of property, quicker apprehension of criminals, and ultimately the saving of monies. Establishment of a uniform emergency number and identification of thoroughfares and dwelling places are matters of concern and interest to all citizens. It is the purpose of this Chapter to establish the number 911 as the primary emergency telephone number for use in communications districts created in parishes as herein provided and to provide for the identification of all streets, roads, highways, and dwelling places in such districts which are not otherwise designated by name and number.
[2] This ordinance was subsequently amended by Ordinance No. 8668.